UNITED STATES DISTRICT COURT
NORTHERNERN DISTRICT OF OHIO

**Jacqueline Tschan,** as guardian and next friend
on behalf of **M.T.** a protected minor,

And

**Alton Tschan**, as guardian and next friend  on
behalf of **M.T.** a protected minor,

     Plaintiffs,

v.

**Toledo Public Schools,**

And

**Board of Education Toledo Public Schools**,

And

**Scott Michaelis,**

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:23-cv-913

Judge

**JURY DEMAND**

# C O M P L A I N T

NOW COMES Jacqueline Tschan, as guardian and next friend  on behalf of M.T. a

protected minor, and Alton Tschan, as guardian and next friend  on behalf of M.T. a protected

minor, and M.T., a protected minor, by and through the undersigned counsel, Owen B. Dunn, Jr.,

Counsel for Plaintiff, who hereby files this Complaint against Toledo Public Schools, Board of

Education Toledo Public Schools, and Scott Michaelis for compensatory, economic, and punitive

damages along with reasonable attorney fees and costs, alleging as follows:

## PARTIES

1.  Plaintiff M.T., was at all times relevant to the events complained of herein an eleven-

year- old girl enrolled with defendant Toledo Public Schools (hence "TPS") as a student in the 4th grade.  M.T. is currently thirteen years old.

2.     Jacqueline Tschan and Alton Tschan are the guardians and natural parents of minor daughter M.T.

3.     Plaintiffs resided at all times relevant in Toledo, Lucas County Ohio.

4.     Defendant TPS is a public school district in the State of Ohio with its principal offices located in Lucas County Ohio.

5.     Defendant Board of Education Toledo Public Schools (hence "Board") is a public school board in the State of Ohio with its principal offices located in Lucas County Ohio.

6.     Defendant Scott Michaelis ("Michaelis") was at all times relevant employed by defendant TPS at Elmhurst Elementary School and in that capacity served as plaintiff M.T.'s special education teacher/Intervention Specialist (IS) in the autism room. Defendant Michaelis is also believed to have been a resident of Lucas County Ohio at the time of the events complained of herein.

## JURISDICTION AND VENUE

7.     The events giving rise to the plaintiffs' request for relief occurred in Lucas County Ohio.

8.      No defendant is entitled to qualified or governmental immunity in relation to the events complained of herein and (or) the plaintiffs' request for relief.

9.     The Court has jurisdiction pursuant to the following statutes: Title II of the *Americans with Disabilities Act*, 42 USC §12101, *et seq.* (hence "ADA"); 42 USC §1983; Section 504 of the *Rehabilitation Act of 1973*, as amended, at 29 USC §794 (hence "Rehab Act"); and/or pursuant to 28 USC §1343(a)(4).

10.    Because they relate to and (or) arise from the same events or controversies, this court has

concurrent supplemental jurisdiction pursuant to 28 USC §1367 with respect to plaintiffs'

state law claims.

11.     Venue is proper in the Northern District of Ohio per 28 USC §1391(b) because the events

giving rise to plaintiffs' claims occurred in this district and the defendants are educational

institutions in this district and (or) individuals who reside within the district.

## FACTUAL ALLEGATIONS

12.     Plaintiffs reincorporate the allegations in ¶¶1 through 11 as if restated here.

13.     At all times relevant plaintiff minor M.T. was a special education student diagnosed with

one or more autism spectrum disorders.

14.     At all times relevant an *Individualized Educational Program* ("IEP") was in effect for

plaintiff minor M.T. who qualified as a person entitled to special education services.

15.     Plaintiff directed issues with the scope or adequacy of the IEP in effect at the time of the

events complained of herein with the Ohio Department of Education, Office for

Exceptional Children, as they related to this incident and has exhausted all administrative

remedies.

16.     At all times relevant defendant Michaelis was supposed to serve as plaintiff minor M.T.'s

fourth grade intervention specialist and special education teacher in the autism room at

Elmhurst Elementary, a facility operated by defendant TPS and governed by defendant

Board.

17.     In November 2020 that in response to M.T. refusing to apply hand sanitizer upon his

request, and M.T. subsequently becoming loud verbally, defendant Scott Michaelis

reprimanded M.T. by tackling her like a football linebacker, and pushed her head down

causing it to slam on the ground. This occurred in the Elmhurst Elementary School

hallway.

18.    The incident was witnessed by M.T.'s one-on-one paraprofessional, Taneisha Callahan and student teacher, Hanna Dettinger.

19.    Ms. Dettinger has stated that at the time of the November 2020 incident she reported the occurrence to her student teaching program supervisor at Bowling Green State University.

20.    Plaintiffs Alton Tschan and Jacqueline Tschan were not notified of the November 2020 incident.

21.    In February 2021 M.T. was performing a writing assignment in class.  M.T. has very bad handwriting and per M.T.'s IEP she does not ever have to write her own assignments because this sometimes is a behavioral trigger for her and she is permitted to have a scribe.  Defendant Scott Michaelis was overseeing the assignment and requested M.T. erase her written work.  He then forced an eraser into M.T.'s hand.  M.T. responded by spitting on or at Michaelis.  To reprimand her, Michaelis grabbed M.T. by the nape of her neck, pressed her head into the desk forcibly, and then applied a bear hug.  It was at this time, M.T.'s one-on-one paraprofessional, Taneisha Callahan, said "Get your hands off of her and do not touch her again."

22.    The incident was witnessed by M.T.'s one-on-one paraprofessional, Taneisha Callahan and student teacher, Hanna Dettinger.

23.    Ms. Dettinger has stated that at the time of the February 2021 incident she reported the occurrence to her student teaching program supervisor at Bowling Green State University.

24.    Plaintiffs Alton Tschan and Jacqueline Tschan were not notified of the February 2021

incident.

25.    In March 2021, student teacher Ms. Hanna Dettinger, paraprofessional Taneisha Callahan, and paraprofessional Ms. Ashley (last name unknown) reported the incidents to Lynn Moran, principal at Elmhurst.

26.    On May 6, 2021, plaintiff Jacqueline Tschan received a telephone call from special needs supervisor Allison Sniegowski who requested a meeting be arranged to discuss M.T. and it was scheduled for May 7, 2021 at 8:30AM.

27.    Present at the May 7, 2021 meeting were Elmhurst principal Lynn Moran, special needs supervisor Allison Sniegowski, education program specialist Kelly Walker, and plaintiff Jacqueline Tschan.

28.    It was reported at this meeting that "a CPI hold may have been applied improperly" upon M.T. by defendant Scott Michaelis.

29.    Defendant Scott Michaelis was removed from the classroom and placed on leave on May 6, 2021.  He reportedly resigned and did not return to the classroom.

30.    Jacqueline Tschan discussed the violent incidences with M.T. on May 8 and May 9, 2021.  M.T. confirmed that "Mr.  Scott hurt me."  M.T. confirmed the aggressive tackle, holds, and head slamming.

31.    M.T. also told Jacqueline Tschan that Defendant Scott Michaelis inappropriately touched her under her pants and M.T. made a gesture with her finger. M.T. could not specify a date.

32.    M.T. also told Jacqueline Tschan that Defendant Scott Michaelis "put his hand up my shirt and it felt like my bra was gonna rip off."  M.T. indicated this took place in the classroom's attached private bathroom. M.T. could not specify a date.

33.  On May 10, 2021 a report of abuse was made to Lucas County Children Services (CSB).

34.  On May 11, 2021 a Toledo Police Department detective recorded an interview with M.T. in the presence of CSB who watched via video.

35.  Defendant Scott Michaelis declined to speak to Toledo Police or CSB. Subsequently, due to an inability to speak to Michaelis and a lack of physical evidence, the CSB case was closed.

36.  On information and belief, faculty and administrative officials of Defendants TPS and Board knew about the abuse by defendant Michaelis on M.T. for up to six months.

37.  At all times relevant defendants TPS, Board, and Michaelis knew or should have known that plaintiff minor M.T. was a highly vulnerable student with a disability and who had been diagnosed with one or more autism spectrum disorders.

38.  At all times relevant defendants TPS, Board, and Michaelis knew or should have known that they had an affirmative duty to report incidences of abuse against plaintiff minor M.T. but they did not report the offenses to the Plaintiffs Alton Tschan and Jacqueline Tschan, the State of Ohio Department of Education, police, or to Lucas County CSB.

39.  At all times relevant defendants TPS, Board, and Michaelis knew or should have known that defendant TPS' own school policy of conduct made it unlawful to physically assault and (or) otherwise discriminate against plaintiff minor M.T. based upon her disability.

40.  Defendants TPS and Board did not properly train or supervise defendant Michaelis to teach M.T.

41.  Defendants' actions and omissions were a gross deviation from accepted practices for caring for multi-handicapped students.

42.  As a result of the abusive events, an IEP meeting was held on May 25, 2021 wherein it

was reported M.T. "does not want to go to school anymore."

43.     As a result of the abusive events, M.T.'s behavior issues have escalated or returned.

44.     As a result of the abusive events, M.T. frequently suffers from high anxiety.

45.     As a result of the abusive events, M.T. does not want to go into the bathroom at school.

46.     As a result of the abusive events, M.T. will barely eat or drink at school.

47.     As a result of the abusive events, M.T. has suffered emotional distress and been in active counseling at Harbor which continues today.

48.     As a result of the abusive events, M.T. has suffered physical pain, acute and chronic emotional distress, and psychological damage.

49.     As a result of the abuse by Defendants towards their child, Alton Tschan and Jacqueline Tschan have suffered acute and chronic emotional distress and psychological damage.

50.     As a direct and proximate result of the defendants' wrongful acts, plaintiffs have sustained damages as more fully set forth herein

## COUNT I

### VIOLATION OF 42 USC §1983

51.     Plaintiffs reincorporate the allegations in ¶¶1 through 49 as if restated here.

52.     Plaintiff minor M.T. has a federally-guaranteed right to a public education without discrimination and (or) harassment based upon his disability pursuant to Title II of the ADA and §504 of the *Rehab Act*. Plaintiff minor M.T. also has a right to liberty, including the right to personal security and bodily integrity and the right to be free from fear and harm.

53.     Defendants deprived plaintiff minor M.T. of this federal statutory rights and were deliberately indifferent to same when without limitation they failed to take adequate

measures to protect her at school, when they actively jeopardizing her personal security and bodily integrity by creating an unreasonable risk and (or) apprehension of harm, and by jeopardizing her education.

54.    Defendants deprived plaintiff minor M.T. of a public education without discrimination by intentionally and (or) with deliberate indifference physically assaulting her, negligent supervision of its agents and employees, and failing to promptly report and remedy aforementioned assaults that occurred in the school day, during class time and on school premises.

55.    Defendants acted under color of state law and used and abused the power of their office when they deprived plaintiff minor M.T. of her federal rights and otherwise discriminated against her based upon her disability as set forth in the factual allegations of this complaint.

56.    As a direct and proximate result of defendants' violation of plaintiff minor M.T.'s civil rights plaintiffs have sustained injuries and damages including but not limited to humiliation/harassment, mental anguish, loss of reputation, loss of standing in the community and among their peers, pain and suffering, and emotional and physical distress among others; and plaintiffs seek compensatory, economic, and punitive damages along with reasonable attorney fees and costs.

## COUNT II

### DISABILITY-BASED DISCRIMINATION IN VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT

**42 USC §12132 et seq**

57.  Plaintiffs reincorporate the allegations in ¶¶1 through 56 as if restated here.

58.  Plaintiff minor M.T. is a qualified individual with a disability as defined in 42 USC §12131(2).

59.  Defendant TPS receives federal funding and is a public entity for the purposes of the ADA pursuant to 42 USC §12131(1).

60.  The ADA and its implementing regulations require that public entities avoid unnecessary policies, practices, criteria, or methods of administration that have the effect or tendency of excluding or discriminating against persons with disabilities.

61.  The U.S. Department of Justice has filed a statement of interest in *SR and LG v Kenton County, et al* (2:15-cv-00143)(E.D. Ky. 2015) indicating that schools should train personnel to recognize and respond appropriately to youth behavior that arises as a manifestation of the disability so as to avoid the violation of the children's rights under federal law including the ADA.

62.  Defendants violated the ADA by discriminating against plaintiff minor M.T. based upon behaviors that arose exclusively and (or) directly as a manifestation of plaintiff's disability. Whereas, Defendants physically assaulted plaintiff minor M.T. during class and inside the school.

63.  As a direct and proximate result of defendants' unlawful discrimination, plaintiffs have sustained injuries and damages, including but not limited to humiliation/harassment, mental anguish, loss of reputation, loss of standing in the community and among their peers, pain and suffering, and emotional and physical distress among others; and plaintiffs seek compensatory, economic, and punitive damages along with reasonable

attorney fees and costs.

## COUNT III

## VIOLATION OF THE REHAB ACT
### 29 USC §701 et seq

64.   Plaintiffs reincorporate the allegations in ¶¶1 through 63 as if restated here.

65.   Plaintiff minor M.T. is a "disabled/handicapped" individual as defined by 29 USC §705.

66.   The *Rehab Act* and its implementing regulations require that defendants administer programs / activities such that no otherwise qualified individual with a disability shall solely by reason of her or his disability be subjected to discrimination under any program or activity receiving federal financial assistance.

67.   Plaintiff minor M.T. was subjected to discrimination by defendants due to her disability as described more fully in the factual allegations of this complaint.

68.   In violation of the very purpose of the ADA and the *Rehab Act,* defendants punished plaintiff minor M.T. for behavior which was a result of her disability.

69.   Defendant Michaelis engaged in acts that were intentional, were performed in bad faith, and were a result of gross misjudgment that was outside the scope of his duties as school educator.

70.   As a direct and proximate result of defendants' unlawful discrimination, plaintiffs have sustained injuries and damages including but not limited to humiliation/harassment, mental anguish, loss of reputation, loss of standing in the community and among their peers, pain and suffering, and emotional and physical distress among others; and plaintiffs seek compensatory, economic, and punitive damages along with reasonable attorney fees and costs.

## COUNT IV

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

71.    Plaintiffs reincorporate the allegations in ¶¶1 through 70 as if restated here.

72.    Defendant Michaelis intentionally and (or) recklessly subjected plaintiff minor M.T. to emotional distress and related damage as described more fully in the factual allegations of this complaint.

73.    The intentional and (or) reckless conduct of defendant Michaelis was extreme and outrageous.

74.    The abuse by defendant Michaelis of his position and power with full knowledge of plaintiff minor M.T.'s particular susceptibility of and to emotional distress by reason of her diagnosed condition / disability – both individually and on behalf of defendant TPS and (or) defendant Board – was outrageous in character and so extreme as to go beyond all bounds of decency.

75.    As a direct and proximate result of defendants' outrageous conduct plaintiffs have sustained injuries and damages including but not limited to humiliation, mental anguish, pain and suffering, emotional distress, and economic damages among others.

**COUNT V**

**NEGLIGENT HIRING, SUPERVISION, and/ or RETENTION**

76.    Plaintiffs reincorporate the allegations in ¶¶1 through 75 as if restated here.

77.    In the school setting there exists a special relationship between school officials / administrators and the children / student under their supervision and control.

78.    Defendant TPS and Defendant Board at all times relevant did employ teachers, staff, administrators and others; and they exercised jurisdiction and control over the curriculum, policies, and procedures of said teachers, staff, administrators and others

were obligated to follow. Moreover defendant TPS and (or) defendant Board determined the qualifications and (or) lack of qualifications of said personnel in order to accomplish said objectives.

79.    Defendant TPS and Defendant Board negligently supervised and (or) retained defendant Michaelis as Michaelis discriminated, harassed, and physically assaulted plaintiff minor M.T. due to her disability.

80.    Following the offending incidents, defendant TPS and (or) defendant Board failed to take proper remedial action in relation to the discrimination, did not report it to authorities or parents, and instead retained defendant Michaelis despite his assault, harassment, and (or) discrimination against a developmentally disabled student in the person of plaintiff minor M.T.

81.    As a direct and proximate result of defendants' outrageous conduct, plaintiffs have sustained injuries and damages including but not limited to humiliation/harassment; mental anguish; pain and suffering; emotional distress; and economic damages, among others.

### COUNT VI

### ASSAULT

82.    Plaintiffs reincorporate the allegations in ¶¶1 through 81 as if restated here.

83.    In attacking M.T. in November 2020, February 2021 and other undated instances, Michaelis willfully attempted to harm or touch M.T.'s in an offensive manner.

84.    As a direct and proximate cause of the foregoing actions of Michaelis, M.T. has suffered damages.

### COUNT VII

## BATTERY

85.    Plaintiffs reincorporate the allegations in ¶¶1 through 84 as if restated here.

86.    In  attacking  M.T.  in  November  2020,  February  2021  and  other  undated  instances, Michaelis willfully engaged in an intentional touching of or application of force to M.T.'s body and did so in a harmful and offensive manner, and without consent.

87.    As a direct and proximate cause of the foregoing actions of Michaelis, M.T. has suffered damages.

## COUNT VIII

### FAILURE TO REPORT KNOWN OR SUSPECTED ABUSE
### R.C. §2151.421(A)

88.    Plaintiffs reincorporate the allegations in ¶¶1 through 87 as if restated here.

89.    Michaelis is a school employee.

90.    As a result of other school employees having witnessed the incidents, and reported their observations to administrators, TPS and Board knew or had reasonable cause to suspect that M.T. was abused or was at risk of abuse by Michaelis.

91.    TPS and Board violated R.C. §2151.421(A) by failing to immediately (or ever) report the known or suspected abuse or risk of abuse of M.T. to county children services agency or a municipal or county police officer.

92.    M.T. has suffered damages as a result of TPS and Board violation of R.C. §2151.421(A).

93.    M.T. is entitled to damages.

## COUNT IX

## LOSS OF CONSORTIUM

94.     Plaintiffs reincorporate the allegations in ¶¶1 through 93 as if restated here.

95.     As a direct and proximate result of the conduct of the Defendants, Jacqueline Tschan and Alton Tschan as the guardians and natural parents of minor daughter M.T., have been damaged due to the deprivation of sevices, society, companionship, comfort, love, solace and affection of their daughter and are entitled to recover for their loss of consortium in an amount to be determined at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, plaintiffs request that this court enter its judgment against defendants providing the following relief:

A.      A determination of the relative rights and obligations of the parties and a declaration that defendants have violated plaintiff minor M.T.'s rights under the ADA, and §504 of the *Rehab Act*;

B.      An award of reasonable attorney fees and costs of litigation pursuant to the ADA, 42 USC §1988;

C.      An award of compensatory damages against defendants in whatever amount exclusive of costs, interest, and attorney fees, plaintiffs are found to be entitled;

D.      An award of punitive / exemplary damages against defendants in whatever amount exclusive of costs, interest and attorney fees, plaintiffs are found to be entitled (and awarded to the fullest extent available under the law);

E.      Any and all other remedies provided pursuant to the ADA, 42 USC §1983, and the Rehab Act;

F.      Any other appropriate anti-discriminatory measures designed to overcome and remedy the above-described acts and practices; and

G.      Any other relief deemed just, necessary, equitable, and appropriate by this court.

Respectfully Submitted,

*Counsel for Plaintiff:*

/s/ Owen B Dunn Jr.
Owen B. Dunn, Jr., Esq. (0074743)
Law Offices of Owen Dunn, Jr.
The Ottawa Hills Shopping Center
4334 W. Central Ave., Suite 222
Toledo, OH 43615
(419) 241-9661 – Phone
(419) 241-9737 – Facsimile
Monroe, MI: (734) 240-0848
dunnlawoffice@sbcglobal.net